UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| UNITED STATES OF AMERICA<br><br>-v.-<br><br>JOSE BARRAZA PAYAN,<br><br>                          Defendant. | 18 Cr. 422 (KPF)<br><br>**ORDER** |

KATHERINE POLK FAILLA, District Judge:

Defendant Jose Barraza Payan, who is currently housed at the Federal Correctional Institution in Ray Brook, New York ("FCI Ray Brook"), has applied for compassionate release, in the form of resentencing to time served, pursuant to 18 U.S.C. § 3582(c)(1)(A)(i).  In support, Mr. Barraza Payan cites certain medical and family issues, as well as the conditions of his confinement during the ongoing COVID-19 pandemic.  The Government opposes this motion.  As set forth in the remainder of this Order, the Court grants in part Mr. Barraza Payan's motion.

## BACKGROUND

On April 16, 2018, Mr. Barraza Payan — a citizen of Mexico — was arrested on a sealed criminal complaint that charged him with illegally reentering the United States after having been removed subsequent to the commission of a felony, in violation of 8 U.S.C. § 1326(a) and (b)(1).  (Dkt. #1).  On June 14, 2018, Mr. Barraza Payan was indicted on the same charge.  (Dkt. #9).  Two weeks later, on June 29, 2018, Mr. Barraza Payan entered a plea of guilty to the indictment without a plea agreement.  (Dkt. #13 (plea transcript)).  In anticipation of the plea, the Government issued a letter to defense counsel

pursuant to the suggestion of the Second Circuit in *United States* v. *Pimentel*, 932 F.2d 1029 (2d Cir. 1991), in which it offered its then-current estimate of Mr. Barraza Payan's exposure under the United States Sentencing Guidelines to be 57 to 71 months' imprisonment. (*Id.* at 21-22). When asked what he did that made him guilty of the offense charged in the Indictment, Mr. Barraza Payan responded:

> Well, I had no permission to return to the United States, and I returned. In the year 2012, I was deported from the United States after I was convicted for a felony. I returned to the United States in 2017, and I was detained in Manhattan on June 6th of [2017]. I did not have permission from anyone to return to the United States. And I knew that my conduct was illegal.

(*Id.* at 23-24). At the conclusion of the proceeding, the Court accepted Mr. Barraza Payan's guilty plea. (*Id.* at 25-26).

Of note, the instant case was not Mr. Barraza Payan's first violation of the U.S. immigration laws. To the contrary, Mr. Barraza Payan was prosecuted twice in the United States District Court for the Northern District of New York for illegal reentry, and once in the United States District Court for the District of Arizona for illegal entry, for which he received sentences of imprisonment of 4 months, 18 months, and 6 months, respectively. (Final Presentence Investigation Report ("PSR" (Dkt. #15)) ¶¶ 33-40). The PSR also noted ten instances in which Mr. Barraza Payan entered the United States without inspection, using fictitious names and/or dates of birth. (*Id.* at ¶ 45).[1]

---

[1] *See also* PSR ¶ 59:

> Available records show that the defendant illegally entered the U.S. in 1988 or 1989, as reflected in his July 19, 2012, Washington

Sentencing in the matter took place on October 18, 2018. (*See* Dkt. #19 (sentencing transcript); Dkt. #18 (judgment)). The Court began by discussing a then-undischarged sentence of six years' imprisonment that had been imposed on Mr. Barraza Payan in New York County Supreme Court. (Dkt. #19 at 3-4; *see also* PSR ¶ 41 (discussing 2017 conviction for criminal possession of a controlled substance in the second degree)). After discussing the various options available to it, the Court clarified that it intended to impose a fully consecutive sentence, rather than a sentence that would be administered partially concurrently with the state-court sentence. (Dkt. #19 at 8). After hearing from counsel for both sides and from Mr. Barraza Payan, the Court varied downwardly to a term of 30 months' imprisonment, reasoning:

> When one thinks about illegal reentry cases, there are two things in play or two things that I have considered, and one is the degree to which an individual such as Mr. Barraza Payan would be deterred from coming back to this country, and unfortunately for him there are so many episodes of him returning to this country in the face of illegal reentry, prosecutions and convictions and sentences, but worse than that is the fact that he has come back and engaged in criminal conduct, very serious narcotics trafficking for which he has been sentenced to a six[-]year term.
>
> Thinking about the sentence in that case, thinking about what is an appropriate punishment — and I don't want to use the term incremental, because this is a separate offense — but a punishment that balances

---

County (NY) presentence report. Barraza Payan has illegally entered or attempted to illegally enter the U.S. on at least 14 separate occasions between 1995 and 2017. He has been formally deported from the U.S. on at least five separate occasions, including the following: on October 9, 2002, via San Ysidro, CA; on December 11, 2007, via El Paso, TX; on June 15, 2010, via Calexico, CA; on August 10, 2012; and on April 14, 2014. The defendant has no legal immigration status in the U.S.

> what he is receiving on the state case — I'm imposing a term of 30 months, fully consecutive to the state court sentence, and I will order that that term of imprisonment be followed by a one[-]year term of supervised release.

(Dkt. #19 at 16-17). The Court understands from the parties' submissions that Mr. Barraza Payan completed serving his state custodial term in or about September 2021, at which time he was transferred to the custody of the federal Bureau of Prisons ("BOP") to begin serving his sentence in this case.

Mr. Barraza Payan filed a *pro se* motion for compassionate release on November 22, 2021, and a counseled motion for same on July 13, 2022. (Dkt. #22). In brief, the defense argued that Mr. Barraza Payan should receive a reduction in sentence because (i) "his advanced age of 52 and diagnosis of obesity nevertheless place him at elevated risk of serious illness if he contracts the [COVID-19] virus" (*id.* at 1); (ii) he desired to return to Mexico to support and care for his family, including his elderly and infirm parents (*id.* at 6); and (iii) his state and federal sentences have been more severe than intended because of his conditions of confinement during the pandemic (*id.* at 7-8). The Court ordered a response from the Government (Dkt. #23), and the Government's letter brief in opposition was filed on August 15, 2022 (Dkt. #24).

## APPLICABLE LAW

Under 18 U.S.C. § 3582(c)(1)(A)(i), as modified by the First Step Act, Pub. L. No. 115-391, 132 Stat. 5194 (Dec. 21, 2018), a court may reduce a defendant's sentence upon motion of the Director of the BOP, or upon motion of the defendant. A defendant may move under § 3582(c)(1)(A)(i) only after the

4

defendant has "fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier." *Id.*; *cf. United States* v. *Saladino*, 7 F.4th 120, 124 (2d Cir. 2021) (holding that the government may waive or forfeit the exhaustion requirement).

When considering an application under § 3582(c)(1)(A)(i), a court may reduce a defendant's sentence only if it finds that "extraordinary and compelling reasons warrant such a reduction," and that "such a reduction is consistent with the applicable policy statements issued by the Sentencing Commission." 18 U.S.C. § 3582(c)(1)(A)(i); *see generally United States* v. *Kimbell*, No. 21-288, 2021 WL 5441249, at *1 (2d Cir. Nov. 22, 2021). "The defendant has the burden to show he is entitled to a sentence reduction." *United States* v. *Ebbers*, No. 02 Cr. 1144-3 (VEC), 2020 WL 91399, at *4 (S.D.N.Y. Jan. 8, 2020) (citing *United States* v. *Butler*, 970 F.2d 1017, 1026 (2d Cir. 1992)).

The Second Circuit has summarized the standards pursuant to which district courts must evaluate compassionate release applications:

> Section 3582(c)(1)(A) authorizes a court to reduce a previously imposed term of imprisonment upon finding that "extraordinary and compelling reasons warrant such a reduction." 18 U.S.C. § 3582(c)(1)(A)(i). A court deciding a compassionate release motion can consider "the full slate of extraordinary and compelling reasons that an imprisoned person might bring before [it]." *United States* v. *Brooker*, 976 F.3d 228, 237 (2d Cir. 2020). But there are three requirements that must be

5

> satisfied before a court can grant such relief. First, absent waiver or forfeiture by the government, an inmate must exhaust administrative remedies by requesting such relief from prison authorities. Specifically, an inmate may ask the sentencing court to consider reducing a sentence only "after the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier."  18 U.S.C. § 3582(c)(1)(A); *see also United States* v. *Saladino*, 7 F.4th 120, 124 (2d Cir. 2021) (holding that the government may waive or forfeit the exhaustion requirement). Second, a court must "consider[ ] the factors set forth in [18 U.S.C. §] 3553(a) to the extent that they are applicable." 18 U.S.C. § 3582(c)(1)(A); see [*United States* v. *Jones*, 17 F.4th 371, 374-75 (2d Cir. 2021)]. Section 3553(a), in turn, lists numerous factors a court must review when imposing a sentence. These include, as most relevant here, "the nature and circumstances of the offense and the history and characteristics of the defendant"; "the need for the sentence imposed ... to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense"; "the need for the sentence imposed ... to provide the defendant with ... correctional treatment in the most effective manner"; and "the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct." 18 U.S.C. § 3553(a). Third, the inmate must demonstrate that his proffered circumstances are indeed "extraordinary and compelling" such that, in light of these § 3553(a) factors, a sentence reduction is justified under § 3582(c)(1)(A) and would not simply constitute second-guessing of the sentence previously imposed.

*United States* v. *Keitt*, 21 F.4th 67, 71 (2d Cir. 2021); *accord United States* v. *Halvon*, 26 F.4th 566, 570 (2d Cir. 2022); *see also United States* v. *Martinez*, No. 06 Cr. 987-1 (DC), 2021 WL 3374530, at *2 (S.D.N.Y. Aug. 2, 2021) (discussing what can qualify as "extraordinary and compelling reasons"). The

court's discretion also includes the power to reduce, as well as to eliminate, the remaining term of a defendant's sentence.  *See Brooker*, 976 F.3d at 237.

## DISCUSSION

The parties agree, for purposes of this motion, that the exhaustion requirement in 18 U.S.C. § 3582(c)(1)(A)(i) has been satisfied.  (*See* Dkt. #22 at 12; Dkt. #24 at 4 n.2 ("The Government agrees that the defendant has exhausted his administrative remedies under § 3582(c)(1)(A)(i).")).  The Court thus proceeds to consider whether Mr. Barraza Payan has identified "extraordinary and compelling reasons" warranting his release, and concludes that he has.

Mr. Barraza Payan begins by arguing that he is at a higher risk of having a more severe reaction if he were to contract the COVID-19 virus, because of the congregate setting, his age and obesity, and the proliferation of easily transmissible variants.  (Dkt. #23 at 7-11).  Courts in this District have granted, and denied, compassionate release motions predicated on the existence of the COVID-19 pandemic and the risks of its transmission in prisons.  *See generally United States* v. *Morrison*, No. 16 Cr. 551-1 (KPF), 2020 WL 2555332, at *2 (S.D.N.Y. May 20, 2020) (collecting cases).  This Court continues to align itself with those courts that have found "that the risks posed by the pandemic alone do not constitute extraordinary and compelling reasons for release, absent additional factors such as advanced age or serious underlying health conditions that place a defendant at greater risk of negative

7

complications from the disease." *United States* v. *Nwankwo*, No. 12 Cr. 31 (VM), 2020 WL 2490044, at *1-2 (S.D.N.Y. May 14, 2020) (collecting cases).

Mr. Barraza Payan has not made such a showing. To begin, Mr. Barraza Payan is nearly 53 years old, and people over 50 years of age have been identified by the Centers for Disease Control and Prevention (the "CDC") as a group who may be more susceptible to hospitalization or death if they were to contract the COVID-19 virus. *See* CDC, *Risk for COVID-19 Infection, Hospitalization, and Death By Age Group*, https://www.cdc.gov/coronavirus/2019-ncov/covid-data/investigations-discovery/hospitalization-death-by-age.html (accessed December 18, 2022). The CDC has also identified obesity as a condition that might increase an individual's chances of contracting severe illness from the COVID-19 virus. *See* CDC, *People with Certain Medical Conditions*, https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-with-medical-conditions.html (accessed December 18, 2022). But the Court has reviewed with care Mr. Barraza Payan's BOP medical records, which make clear that Mr. Barraza Payan has worked successfully with BOP medical professionals to address his health issues. There is nothing to suggest that Mr. Barraza Payan has been unable to care for himself or has been neglected by BOP medical personnel. Instead, Mr. Barraza Payan appears to have received appropriate medical care while incarcerated, including a recent preventative health screening on December 2, 2022. *See, e.g.*, *United States* v. *Brady*, No. 18 Cr. 316 (PAC), 2020 WL 2512100, at *3-4 (S.D.N.Y. May 15, 2020)

(acknowledging serious nature of defendant's medical conditions but denying compassionate release where conditions stable and managed in BOP facility); *see also United States* v. *Mood*, No. 19 Cr. 113 (VB), 2021 WL 242482, at *1 (S.D.N.Y. Jan. 25, 2021) (denying motion for compassionate release where defendant's "medical records reflect that his other health conditions have been well monitored and managed by BOP").

The Court also observes that Mr. Barraza Payan has received the COVID-19 vaccine, including a booster shot in March 2022. (Dkt. #24 at 4). Mr. Barraza Payan's vaccinated status mitigates, though it does not reduce entirely, his risk of contracting the COVID-19 virus and having serious medical conditions, and it further counsels against a finding of "extraordinary and compelling reasons." *See United States* v. *Bailey*, No. 97 Cr. 269 (DLC), 2021 WL 4942954, at *2 (S.D.N.Y. Oct. 22, 2021) ("While the intersection of the COVID-19 pandemic and underlying health conditions can serve as an extraordinary and compelling circumstance justifying compassionate release, Bailey is fully vaccinated against COVID-19 and his medical records indicate that his chronic health conditions are well-controlled. Bailey's risk of continued incarceration given the COVID-19 pandemic does not qualify as an extraordinary and compelling circumstance.").

Federal courts, including this Court, have been appropriately concerned about the conditions of confinement at federal facilities. *See, e.g., United States* v. *Thaher*, No. 17 Cr. 302-3 (KPF), 2020 WL 3051334, at *5-6 (S.D.N.Y. June 8, 2020), *reconsideration denied*, No. 17 Cr. 302 (KPF), 2020 WL 5202093

9

(S.D.N.Y. Sept. 1, 2020). To that end, this Court has scrutinized the BOP's COVID-19 Plan, *see* https://www.bop.gov/coronavirus/ (last accessed December 19, 2022), as well as the BOP's listing of confirmed cases among inmates and staff at each facility. As of the date of this Order, FCI Ray Brook was listed among the BOP's "Level 1 Facilities," a designation given to facilities operating with only minimal modifications. In addition, the BOP has identified no current cases of COVID-19 among inmates, and only three cases among staff, at FCI Ray Brook. On balance, this Court concludes that the danger that Mr. Barraza Payan faces from infection with COVID-19, even accounting for his proffered age and medical condition, does not amount to an extraordinary and compelling reason for granting compassionate release. *Cf. United States* v. *Raia*, 954 F.3d 594, 597 (3d Cir. 2020) ("We do not mean to minimize the risks that COVID-19 poses in the federal prison system, particularly for inmates like Raia. But the mere existence of COVID-19 in society and the possibility that it may spread to a particular prison alone cannot independently justify compassionate release, especially considering BOP's statutory role, and its extensive and professional efforts to curtail the virus's spread.").

Mr. Barraza Payan offers an additional basis for compassionate release that has more traction, namely, that the conditions of his confinement during the COVID-19 pandemic have resulted in a sentence that was more severe than the Court contemplated when it originally sentenced him in October 2018. (*See, e.g.*, Dkt. #22 at 12-13 (listing prior cases in which this Court found that pandemic-related prison conditions constituted "extraordinary and compelling"

10

circumstances warranting a sentence reduction)).  The Court acknowledges that it did not foresee the restrictions that would be precipitated by the pandemic (including lockdowns and curtailment of facility programming and visitation), nor the public health risks faced by individuals like Mr. Barraza Payan who have spent the entirety of the pandemic in a carceral setting, nor the length of time over which these risks and deprivations would persist.  And in a prior decision resolving a compassionate release motion, the Court recognized "that courts reviewing motions for sentence modifications have considered the extent to which onerous lockdowns and restrictions imposed by correctional facilities attempting to control the spread of the virus have made sentences 'harsher and more punitive than would otherwise have been the case.'"  *United States* v. *Hatcher*, No. 18 Cr. 454-10 (KPF), 2021 WL 1535310, at *3 (S.D.N.Y. Apr. 19, 2021) (quoting *United States* v. *Rodriguez*, 492 F. Supp. 3d 306, 311 (S.D.N.Y. 2020)); *see also United States* v. *Mcrae*, No. 17 Cr. 643 (PAE), 2021 WL 142277, at *5 (S.D.N.Y. Jan. 15, 2021) ("[A] day spent in prison under extreme lockdown and in fear of contracting a deadly virus exacts a price on a prisoner beyond that imposed by an ordinary day in prison.  While not intended as punishment, incarceration in such conditions is, unavoidably, more punishing.").  In short, the Court believes that pandemic-induced conditions of confinement *may* constitute "extraordinary and compelling" circumstances warranting compassionate release, particularly for defendants who have (i) served long sentences and (ii) been detained for the entirety of the

pandemic. It therefore proceeds to consider whether such relief is warranted in this case in light of the factors set forth in 18 U.S.C. § 3553(a).[2]

The Court concludes that the factors set forth in 18 U.S.C. § 3553(a) — which include "the nature and circumstances of the offense and the history and characteristics of the defendant," as well as the need "to protect the public from further crimes of the defendant," *id.* § 3553(a)(1), (a)(2)(C) — counsel in favor of a limited reduction in sentence. As the Court discussed with the parties at sentencing, Mr. Barraza Payan has an extraordinary history of violating the federal immigration laws, irrespective of the consequences to him, and there is no reason to believe that the instant conviction will meaningfully deter him. The Court also recognizes that the sentence it imposed reflected a significant downward variance from the applicable Guidelines range, a variance that was imposed over the Government's objection. The fact remains, however, that that sentence was imposed with no awareness of the risks and restrictions that would characterize the ensuing three years. And the Court is pleased to learn of Mr. Barraza Payan's clean disciplinary record. Finally, the Court notes that Mr. Barraza Payan's term of imprisonment will end with his transfer to immigration authorities and his removal from this country. Considering all of these factors, the Court concludes that a modest sentence reduction of five

---

[2] The Court acknowledges that most of Mr. Barraza Payan's incarceration during the COVID-19 pandemic occurred in connection with his state-court sentence, and that this Court has less visibility into (or influence over) the conditions of that confinement. The fact remains, however, that information about the specifics of Mr. Barraza Payan's incarceration during the pandemic could not have been known to the Court at the time of its October 2018 sentence.

months is warranted, to account for the severity of the conditions of confinement.

## CONCLUSION

For the foregoing reasons, Defendant Jose Barraza Payan's motion for compassionate release under 18 U.S.C. § 3582(c)(1)(A) is GRANTED IN PART, insofar as his sentence is modified to reduce the term of imprisonment on Count One from 30 months to 25 months. All other aspects of the sentence remain in full force and effect.

The Clerk of Court is directed to terminate the motion at docket entry 22.

SO ORDERED.

Dated:  December 19, 2022
        New York, New York

_____
KATHERINE POLK FAILLA
United States District Judge